UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 09-CR-20262 |
| Plaintiff, | Sean F. Cox |
| vs. | United States District Judge |
| DONALD S. LILY, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION TO SUPPRESS (Dkt. 9)**

**I.   PROCEDURAL HISTORY**

Defendant was arrested on March 4, 2009, following the stop of a vehicle he was driving.  He was indicted on June 17, 2009, and charged with a single count of possessing a quantity of marijuana with the intent to distribute.  (Dkt. 1).  On August 13, 2009, defendant filed a motion to suppress the evidence seized in the search of the vehicle he was driving on March 4, 2009.  (Dkt. 9).  The government filed its response to the motion on August 21, 2009.  (Dkt. 11).  An evidentiary hearing was conducted on September 28, 2009 and on October 16, 2009.  The government filed a supplementary brief on October 27, 2009, as did defendant on November 6, 2009.  (Dkt. 17, 20).  A reply brief was filed by the government on November 10, 2009.  (Dkt. 21).

## II.     RELEVANT FACTS

On March 4, 2009, defendant was driving a 1995 Chevrolet Suburban on Neff Street Mt. Morris Township near the City of Flint. (Dkt. 15, 9/28/09 Hrg. Tr. p. 6). Going the opposite direction on the same street was Officer Veach of the Mt. Morris Township Police Department. *Id.* Officer Veach testified that, as he passed defendant's vehicle, he observed two violations of law regarding defendant's operation of the vehicle: the failure to use a seatbelt and the operation of the vehicle with a cracked windshield.[1] *Id.*

Officer Veach turned his marked police vehicle around and followed defendant's vehicle as it made a few turns before stopping as directed by the officer on Detroit Street. (Dkt. 15, 9/28/09 Hrg. Tr., p. 7). The stop took place on a four-lane street in a residential area. (Dkt. 15, 9/28/09 Hrg. Tr., pp. 20, 31). Officer Veach asked defendant, someone he did not previously know, for his license, registration and proof of insurance and defendant complied with that request. (Dkt. 15, 9/28/09 Hrg. Tr., p. 7). The registration showed that the vehicle was registered to defendant's mother who resided in the Romulus area. (Dkt. 15, 9/28/09 Hrg. Tr., p. 9). Defendant remained in his vehicle while Officer Veach did

---

[1] During the evidentiary hearing, the government noted that it was not relying on the cracked windshield as a basis for the traffic stop, but it was a factor in the stop according to the testimony of Officer Veach. (Dkt. 18, 10/16/09 Hrg. Tr., p. 8).

a computer check of defendant, which resulted in the discovery of a warrant for defendant's arrest based on unpaid child support. (Dkt. 15, 9/28/09 Hrg. Tr., p. 8). Officer Veach called for the assistance of another officer and when the officer arrived, defendant was arrested and placed in the back of Veach's police vehicle. (Dkt. 15, 9/28/09 Hrg. Tr., p. 9). Officer Veach testified that he decided that defendant's vehicle should be towed and impounded because defendant was arrested. (Dkt. 15, 9/28/09 Hrg. Tr., p. 9). Veach testified that impoundment of the vehicle was pursuant to the policy of his department under such circumstances. (Dkt. 15, 9/28/09 Hrg. Tr., p. 10). Officer Veach did a preliminary inventory search of the vehicle and discovered a quantity of marijuana and over $10,000 in cash in some duffle bags in the vehicle. (Dkt. 15, 9/28/09 Hrg. Tr., pp. 11-12).

    The police vehicle Officer Veach was driving on that day was equipped with video recording equipment. (Dkt. 15, 9/28/09 Hrg. Tr., p. 15). The camera was operational following the stop of defendant's vehicle and would have recorded the events after that up to the point when the vehicle was impounded. (Dkt. 15, 9/28/09 Hrg. Tr., p. 15). Officer Veach stated that, pursuant to standard procedure, the tape was turned over to the deputy chief after the shift and the deputy chief maintains custody of the tapes. (Dkt. 15, 9/28/09 Hrg. Tr., p. 15). When first asked about the current availability of the tape on cross examination, Officer Veach said that he had "no idea" if the deputy chief still had the tape. (Dkt. 15,

9/28/09 Hrg. Tr., p. 15). However, on re-direct examination he stated that he had actually checked on the availability of the tape and determined that it was not available. (Dkt. 15, 9/28/09 Hrg. Tr., p. 23). On re-cross examination, he added that he checked the availability of the tape earlier that day and had actually asked the deputy chief if it was available and was told that it was not. Officer Veach said he "believed" the tape had been recorded over. (Dkt. 15, 9/28/09 Hrg. Tr., pp. 23-25). Officer Veach had no explanation for telling the defense counsel one thing on cross-examination and then later testifying to other information, which appeared to be relevant to the response to the question when first asked. (Dkt. 15, 9/28/09 Hrg. Tr., p. 24).

Defendant testified that he had his seatbelt on at all relevant times during the events in question. (Dkt. 15, 9/28/09 Hrg. Tr., p. 34). He also testified that he was taken to the Mt. Morris Township Police Department following his arrest and placed in a cell. While defendant was in the cell, he heard two unidentified individuals talking. (Dkt. 15, 9/28/09 Hrg. Tr., p. 38). One of those two individuals asked to see a tape, after which there was silence, and then someone said "he did have ... his seatbelt [on]." (Dkt. 15, 9/28/09 Hrg. Tr., p. 43). Defendant did not see who made these statements, did not testify that he recognized the voice of either person and did not testify to any statements made by either person that mentioned his name.

### III. ANALYSIS AND CONCLUSIONS

In that the search of defendant's vehicle was conducted without a warrant, the government concedes that it has the burden to establish the existence of an exception to the warrant requirement in order to use the evidence to convict defendant. (Dkt. 15, 9/28/09 Hrg. Tr., p. 3). The government initially contended that the search was proper because it was an inventory search conducted pursuant to policy after the arrest of defendant based on a warrant and, also, that the search would have been proper as a search incident to arrest under the applicable law at the time of the search and, therefore, the evidence should not be suppressed. (Dkt. 15, 9/28/09 Hrg. Tr., p. 4). The government argued that the police lawfully stopped defendant's vehicle based on the existence of probable cause that defendant had committed a traffic violation and, on discovery of the arrest warrant, properly arrested him and searched the vehicle for the purpose of conducting an inventory of the vehicle's contents prior to impoundment.

Defendant argues that he was wearing a seatbelt so there could not be probable cause that a traffic violation had taken place and that, even if the arrest was proper, the inventory search was not consistent with the policy of the Mt. Morris Township Police Department and, therefore, was not proper.

Police officers are allowed to stop a motor vehicle if they have probable cause to believe that the driver of the vehicle has committed a civil infraction.

*United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2007).[2] Probable cause is, of course, a significantly lower hurdle than proving the commission of the offense beyond a reasonable doubt. "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion. *Id*. The existence of probable cause depends on the perception of the officer who is confronted with a set of circumstances from which the officer must reach a conclusion about whether an offense has been committed. That is, if a police officer believes, in good faith, that facts exist, which establish an offense has been committed then probable cause exists, regardless of whether the defendant would ultimately be convicted of the offense or if it is later determined that the officer was mistaken. Therefore, if Officer Veach believed that defendant was not wearing a seatbelt when he stopped defendant then the stop was proper.

Defendant argues that Officer Veach's testimony regarding the seatbelt should not be accepted because defendant states that he was wearing a seatbelt, contrary to the testimony of Officer Veach. Additionally, defendant argues that, because the government did not preserve the tape of the traffic stop and Officer Veach gave inconsistent testimony relating to whether the tape was maintained by

---

[2] A conflict exists as to whether the standard in this Circuit for stopping a vehicle for a civil infraction is probable cause or reasonable suspicion. *Blair*, 524 F.3d at 748, n. 2. Given that the parties in this case rely on the probable cause standard and that would be the higher of the two, that will be the standard applied in these circumstances.

the Mt. Morris Township Police Department, defendant's testimony regarding the seatbelt is "supported." (Dkt. 20, p. 3). Defendant does not explain how these factors "support" defendant's testimony. An inconsistency in one area of a witness's testimony could have a negative impact on other aspects of the witness's testimony, but the failure to preserve the tape does not, by itself, have evidentiary value.

However, the failure of the government to preserve exculpatory evidence does have potential consequences. In *California v. Trombetta*, 467 U.S. 479 (1984) the Supreme Court reviewed a challenge to the procedure in California where state authorities destroyed breath samples taken from drunk driving suspects after the samples were tested. The court found that the authorities were acting in good faith when they destroyed the evidence pursuant to normal procedure and not from a "calculated effort" to circumvent the disclosure of exculpatory evidence. Additionally, the court said that, before the destruction of evidence can rise to the level of a Due Process violation, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 488-89. Four years later, the Supreme Court considered a situation in which state authorities did not preserve certain evidence in a sexual assault case. The court characterized the failure to preserve the

evidence as "negligent" at "worst" and, relying on *Trombetta*, required that the defendant prove "bad faith" on the part of the police before a Due Process violation could be established. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also United States v. Cody*, 498 F.3d 582, 589 (6th Cir. 2007).

In *United States v. Pearl*, 324 F.3d 1210, 1215 (10th Cir. 2003), the court determined that e-mails destroyed by the government did not result in a Due Process violation. The court stated that the government's failure to turn over exculpatory evidence in its possession is governed by *Brady v. Maryland*, 373 U.S. 83 (1963), but the government's loss or destruction of potentially exculpatory evidence is governed by *Trombetta* and *Youngblood*. In order to show a Due Process violation on this basis, defendant would have to demonstrate that (1) the evidence had an exculpatory value that was apparent before the evidence was destroyed, (2) the defendant would be unable to obtain comparable evidence by other reasonably available means, and (3) the government acted in bad faith in destroying the evidence. *Pearl*, 324 F.3d at 1215.

In the present case, it is not clear that the video recording from Officer Veach's police vehicle is exculpatory. The government argues that the video would not disclose what Officer Veach observed when he decided to stop defendant's car because Officer Veach testified that the camera did not start until defendant was actually pulled over. No one who admitted actually seeing the tape

testified as to what could have been seen on the video. In order to demonstrate the tape was exculpatory, defendant might point to the conversation that he overheard at the Mt. Morris Township Police Department which, he says, concluded with someone saying "he" had the seatbelt on. However, defendant did not see who was talking and very little about the actual conversation would allow for the conclusion that the conversation related to defendant's circumstances. No names were mentioned and no vehicles were described. The timing of the comment - soon after defendant's arrest - might suggest that the individuals at the police department office were talking about defendant, but it would be too much of a leap to draw that conclusion based only on the evidence in the record. Further, there is no evidence as to the circumstances under which the tape was destroyed. There was some testimony that tapes are eventually recorded over in the normal course of business of the Mt. Morris Township Police Department, but no testimony established that is what happened here. Officer Veach testified he "believed" it was recorded over, but there did not appear to be a specific basis for that belief. (Dkt. 15, 9/28/09 Hrg. Tr., p. 23).

The present record is simply insufficient to find that the tape was of exculpatory value or that it was destroyed in bad faith. Insufficiency of the evidence is the enemy of the party who carries the burden of proof. In these circumstances, it is defendant who has the burden of proof. Defendant has failed to

carry his burden of proof to show facts from which it could be found that a Due Process violation took place regarding the government's failure to preserve the tape recording.³ While the circumstances relating to the absence of the tape appear suspicious, that suspicion does not rise to the level of satisfying defendant's burden of proof.⁴

Officer Veach's testimony is negatively effected by the unexplained inconsistency relating to the videotape from his police vehicle, but not sufficiently so, such that his testimony about seeing defendant driving without the use of a seatbelt is not believable. His testimony about his observations was consistent and

---

³ Were the undersigned writing on a clean slate, the burden to prove the lack of exculpatory value and to prove the innocent loss or destruction of the evidence would be on the government because it is the government who had possession of the evidence, not the defendant, and it is the government that could best explain the potential significance of the evidence and the manner in which it was destroyed or lost. However, the Supreme Court and the Sixth Circuit, in *Youngblood* and *Cody*, have placed the burden on the defendant. The Second Circuit appears to have placed the burden on the government to demonstrate that no prejudice inures to the defendant from the destruction of potentially relevant evidence but such a burden is beyond the guidance from the Supreme Court or the Sixth Circuit. *United States v. Grammatikos*, 633 F.2d 1013, 1020 (2d Cir. 1980); *United States v. Yevakpor*, 419 F.Supp.2d 242, 245-51 (N.D.N.Y. 2006) (sanctions for the government's destruction of evidence can include dismissal of the charges, adverse inferences or suppression of evidence).

⁴ The government states there was "no reason why the police would deliberately spoil the evidence." (Dkt. 21, p. 2). However, if the tape was viewed following the arrest and it appeared that defendant was wearing a seatbelt, it is quite easy to assume the officers would have feared the tape could discredit Officer Veach's observations and, as a result, destroyed the tape or recorded over it.

he has no apparent motive to fabricate his testimony in that respect.  He did not know defendant or apparently have a reason to selectively pull defendant over on a pretext.  As indicated earlier, the evidence might not prove defendant guilty of not wearing his seatbelt beyond a reasonable doubt, but Officer Veach's good faith belief, even if mistaken, suffices to establish probable cause that defendant was committing a traffic offense and, therefore, the stop of defendant's vehicle was proper.

The government justifies the search of defendant's vehicle following his arrest on three theories.  The first theory is that the search was an inventory search prior to impoundment of the vehicle, the second theory is that the vehicle could have been searched incident to arrest, under the law applicable at the time, and therefore the evidence should not be suppressed, and the third theory is probable cause based on Officer's Veach smelling marijuana when he entered the vehicle to conduct the inventory search.

The second theory is most easily resolved and will be addressed first. Officer Veach did not testify that he searched the vehicle incident to the arrest of defendant so it is not clear that the *possibility* he could have conducted the search on that basis would justify the search.  However, more importantly, if he had conducted the search incident to the arrest of defendant it would have violated the Fourth Amendment as interpreted by *Arizona v. Gant*, 129 S.Ct. 1710 (2009).  The

Sixth Circuit has applied *Gant* retrospectively to a pending case, without consideration of the good faith of the officer, to grant a motion to suppress and that ruling would control the resolution of this issue. *United States v. Lopez*, 567 F.3d 755 (6th Cir. 2009).

With respect to the inventory search theory, a "recognized exception to the warrant requirement permits law enforcement officers to conduct inventory searches, including the contents of closed containers, so long as they do so pursuant to standardized procedures." *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). "Inventory searches further legitimate goals of protecting property from theft or damage, preventing property disputes between the owner and police, and mitigating safety risks inherent in taking possession of unknown items." *Id*. "Whether a police department maintains a written policy is not determinative, where testimony establishes the existence and contours of the policy." *Id*. at 233.

In the present case, Officer Veach testified that it was the routine practice of the Mt. Morris Township Police Department to impound a vehicle when the only occupant is arrested and that it is required that an inventory be conducted when a vehicle is impounded. (Dkt. 15, 9/28/09 Hrg. Tr., p. 10). Later he testified that the vehicle was impounded because it would be a traffic hazard if left on the side of the street and that impounding it would protect it from vandalism or theft. (Dkt, 18, 10/16/09 Hrg. Tr., pp. 9-10). He further testified that there is a written policy

for these searches and that a standard form is used to complete the inventory. (Dkt. 15, 9/28/09 Hrg. Tr., p. 21). These documents were admitted as government's Exhibits No. 1 and No. 2 during the hearing. (Dkt. 18, 10/16/09 Hrg. Tr., p. 10).

Defendant argues that the impoundment of the vehicle was contrary to the written policy of the Mt. Morris Township Police Department and, therefore, improper. Under the written policy, vehicles may be impounded where they are (1) a traffic hazard, (2) they are abandoned, and (3) for the protection of the vehicle from vandalism or theft. (Govt. Ex. 1). Defendant argues that the vehicle was not a traffic hazard because the area is not marked as a "no parking" zone. The vehicle was parked in a lane of traffic and Officer Veach said there was no way it could be legally parked at that location. (Dkt. 15, 9/28/09 Hrg. Tr., pp. 24-26). The testimony of Officer Veach establishes that the vehicle was a traffic hazard regardless of the existence of a "no parking" sign. Defendant has not established, by statute, case law or other authority, that parking is legal at any place in the absence of a "no parking" sign. While the term "abandoned" means different things in different contexts, in this case, the vehicle would have been left on the side of the road with no one immediately available to drive it away and the registered owner of the vehicle residing approximately 80 miles from that location. Officer Veach could have reasonably concluded that the vehicle was not likely to be moved in the foreseeable future and, therefore, it could be considered

"abandoned" for purposes of the impoundment policy. The fact that defendant was not given the opportunity to have someone come and move the vehicle is not controlling. Defendant apparently never offered to have someone come and get the vehicle. The vehicle was still at the impoundment lot five months after the traffic stop, so clearly no one was in a hurry to come and get it. (Dkt. 15, 9/28/09 Hrg. Tr., pp. 27-28).

Defendant also argues that there was no showing the vehicle needed to be protected from vandalism or theft. The government argues that the vehicle was in a high crime area, but there is nothing in the record to suggest that is the case. However, it is not difficult to conclude that a vehicle left on the public road in just about any city in America that contains large audio speakers, an amplifier, a removable radio, music CDs, clothing, prescription medicine and other personal items is at risk from vandalism or theft. (Dkt. 15, 9/28/09 Hrg. Tr., p. 30). Based on the above, the record shows that the vehicle was impounded for reasons included in the written policy of the Mt. Morris Township Police Department.

The government also argues that the search of defendant's vehicle is proper because, when Officer Veach entered the vehicle to conduct the inventory search, he could smell marijuana and that would have provided probable cause to search the vehicle without a warrant. Defendant apparently does not dispute whether the smell of marijuana provides probable cause to search the vehicle, but contends that

Officer Veach did not have the authority to enter the vehicle for any purpose and, therefore, could not have lawfully been in a position to detect the smell of marijuana. The government's position does not represent an independent basis for finding the search of defendant's vehicle was proper. If entry of the vehicle was proper for purposes of conducting the inventory search, the resulting search was proper as an inventory search or a search based on probable cause. If the entry of the vehicle for the inventory search was not proper then the search was improper under either theory. In light of the determination that Officer Veach acted properly when he entered the vehicle to conduct the inventory search, the search is proper under either theory.

## V. RECOMMENDATION

For the above reasons, it is **RECOMMENDED** that defendant's motion to suppress be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 7, 2009
                                             s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      I certify that on December 7, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Robert W. Haviland, AUSA, and Kenneth R. Sasse.

                                                 s/Tammy Hallwood
                                                 Tammy Hallwood
                                                 Case Manager
                                                 U.S. District Court
                                                 600 Church Street
                                                 Flint, MI 48502
                                                 (810) 341-7850
                                                 tammy_hallwood@mied.uscourts.gov